IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORTLAND MARCHE, LLC, AND CERES RICHLAND, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL NATIONAL MORTGAGE ASSOCIATION**,<br><br>Defendant. | Case No. 3:21-cv-00569-IM<br><br>**OPINION AND ORDER** |

Craig G. Russillo & Sarah C. Cotton, Schwabe, Williamson & Wyatt, PC, 1211 SW 5th Avenue, Suite 1900, Portland, Oregon 97204. Attorneys for Plaintiffs.

Sarah J. Crooks & Matthew J. Mertens, Perkins Coie LLP, 1120 NW Couch Street, 10th Floor, Portland, Oregon 97209. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This action comes before the Court on Defendant Federal National Mortgage Association's ("Defendant" or "Fannie Mae") Motion for Appointment of Receiver.[1] ECF 6. Plaintiffs Portland Marche, LLC and Ceres Richland, LLC (collectively, "Plaintiffs" or "Borrowers") sue for money damages based on their allegations that Defendant Fannie Mae violated Oregon H.B. 4204, made false and misleading representations, and violated the duty of good faith and fair dealing, and further seek a declaratory judgment that Plaintiffs are not in default. ECF 21 at ¶¶ 33–54. For the reasons discussed below, Defendant's Motion for Appointment of Receiver, ECF 6, is DENIED.

**BACKGROUND**

Portland Marche, LLC and Ceres Richland, LLC are California limited liability companies with principal places of business in Portland, Oregon. ECF 21 at ¶¶ 1–2; ECF 22 at ¶ 56. Fannie Mae is a corporation and citizen of the District of Columbia. ECF 21 at ¶ 3; ECF 22 at ¶ 55.

On or about April 13, 2017, Borrowers entered into a mortgage loan agreement for the real and personal property known as 11 Marche Apartments (the "property") with Walker & Dunlop, LLC ("Walker & Dunlop"), which included a $12,742,000 loan to Borrowers. ECF 21 at ¶¶ 5–6; ECF 22 at ¶ 64. 11 Marche Apartments is a multi-family apartment building located at 1101 SW Market Street, Portland, Oregon 97201. ECF 21 at ¶ 5. The loan was secured by a lien, executed on April 13, 2017, encumbering the property, rents, and personal property. ECF 21 at ¶

---

[1] Parties have requested oral arguments on the motion. ECF 6; ECF 12. Courts in this district have determined that evidentiary hearings are not required prior to resolving a motion to appoint a receiver. *See Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1259–60 (D. Or. 2009); *Meritage Homeowners' Ass'n v. Bank of New York Mellon*, No. 6:16-CV-00300-AA, 2018 WL 4092017, at *2 (D. Or. May 25, 2018). In this case, both parties received notice of the motion and had the opportunity to submit evidence, which both parties have submitted. Therefore, the Court has determined that oral argument would not help it resolve the motion, and pursuant to LR 7-1(d)(1) declines to hear oral argument.

7; ECF 22 at ¶ 66. The same day, Walker & Dunlop assigned the note and security instrument to Fannie Mae. ECF 21 at ¶ 8; ECF 22 at ¶¶ 71–75, 79.

In Summer 2017, Portland Marche entered into short-term rental leases with Barsala, LLC ("Barsala") and Pelican Executive Suites, LLC ("Pelican") covering twenty-eight units within 11 Marche Apartments. ECF 21 at ¶ 9; ECF 22 at ¶ 80. Subsequently, Plaintiffs and Defendant exchanged a series of correspondence, including letters and emails related to alleged violations of the loan agreement and events of default, and requests for COVID-19-related forbearance. ECF 21 at ¶¶ 10–24; ECF 22 at ¶¶ 94–97. On or about July 27, 2020, Plaintiffs terminated the leases with Barsala and Pelican. ECF 21 at ¶ 20. Plaintiffs ceased making regular payments on the loan in or around November 2020, and efforts to reinstate the loan failed. *Id.* at ¶¶ 23–26.

On February 17, 2021, Plaintiffs filed suit against Defendant in Multnomah County Circuit Court. ECF 1-2. Defendant removed to federal court, ECF 1; ECF 2, and answered on April 22, 2021, ECF 5. Defendant raises three counterclaims: appointment of a receiver, breach of contract, and judicial foreclosure. *Id.* at ¶¶ 106–142. Defendant moved to appoint a receiver on April 23, 2021. ECF 6. Plaintiffs responded on May 11, 2021, ECF 12, and Defendant replied on May 25, 2021, ECF 18. Plaintiffs filed their First Amended Complaint on June 9, 2021. ECF 21. Defendant answered on June 23, 2021, raising the same counterclaims. ECF 22.

## STANDARDS

The appointment of a receiver is an "extraordinary equitable remedy" and "should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (quotation marks omitted) (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)); *see also Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009) ("[T]he appointment of a receiver is considered to be an extraordinary remedy that should be employed

PAGE 3 – OPINION AND ORDER

with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." (quotation marks and citation omitted)).

"[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life*, 563 F.3d at 843. "Therefore, a federal court with diversity jurisdiction over a case must comply with Federal Rule of Civil Procedure 66 ('Rule 66'), even if state receivership law would produce a different result." *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1253 (D. Or. 2009) (citing *Canada Life*, 563 F.3d at 842–43). Rule 66 provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. Because the Court's jurisdiction in this matter is based on diversity, the Court applies Rule 66.

The parties concede that a "district court has broad discretion in appointing a receiver, that it may consider a host of relevant factors, and that no one factor is dispositive." *Canada Life*, 563 F.3d at 845. Though there "is no precise formula for determining when a receiver may be appointed," when determining whether to appoint a receiver with managerial powers, federal courts consider:

> (1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to [the moving party] by denial of the appointment would outweigh injury to the party opposing appointment; (6) the [moving party's] probable success in the action and the possibility of irreparable injury to [that party's] interest in the property; and, (7) whether [the moving party's] interests sought to be protected will in fact be well-served by receivership.

*Id*. at 844 (quotation marks and citations omitted).

# DISCUSSION

## A. Consent to Appointment of Receiver Not Dispositive

Section 3(e) of the Deed of Trust provides, in part, that: "If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its extension of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law." ECF 7-1 at 12.

Defendant focuses much of its briefing on Plaintiffs' consent to the appointment of a receiver. *See, e.g.*, ECF 6 at 10 ("Most importantly, Borrower has already contractually consented to the appointment of a receiver under these circumstances."). Consent, while "a factor that commands great weight," is not alone dispositive. *Sterling Sav. Bank*, 656 F. Supp. 2d at 1260–61. A court must still weigh the *Canada Life* factors. *Id.*; *Canada Life*, 563 F.3d at 840, 844–45 (applying multi-factor analysis despite contractual consent to receivership); *see also California Bank & Tr. v. Shilo Inn*, No. 1:12-CV-00141-CWD, 2012 WL 1883474, at *5 (D. Idaho May 22, 2012) ("The Court will consider the provision in the Deeds of Trust as one factor in addition to the *Canada Life* factors."); *Compass Bank v. Baraka Holdings, LLC*, No. CV-17-06563-AB (RAOx), 2017 WL 10378348, at *3 (C.D. Cal. Oct. 26, 2017) ("[T]he Court is not persuaded that Plaintiffs are entitled to appointment of a receiver merely because the loan agreements provide for one."). Moreover, consent "does not reduce the burden on . . . the party seeking a receiver[ ] to produce evidence of these factors." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262.

Therefore, this Court is not persuaded that Defendant prevails merely because Plaintiffs consented in the Deed of Trust to appointment of a receiver in the event of default. Moreover,

Plaintiff does not concede that they are in default. Accordingly, Plaintiffs' consent is considered as but one factor among the others addressed below.

**B.  *Canada Life* Factors**

The Ninth Circuit has set forth seven factors to consider when determining whether to appoint a managerial receiver. *See Canada Life*, 563 F.3d at 844. The Court addresses each factor in turn.[2]

**1.  Whether the party seeking appointment has a valid claim**

In this case, the motion for appointment precedes any judgment on the merits, so this Court "has not had the benefit of a trial or of hearing all the evidence that bears on [Fannie Mae's] right to foreclose." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262. Defendant alleges multiple events of default and breaches of loan documents. *See, e.g.*, ECF 6 at 5–6 ("Borrower's conduct in leasing the Units to Barsala and Pelican for short-term commercial rental purposes breached Sections 6.02(a)(1) and (2) and is an event of default under Section 14.01(c)(1) of the Loan Agreement."); *id.* at 6 ("Borrower's failure to maintain adequate insurance coverage breaches Sections 9.02(a)(1)(A) and (B) of the Loan Agreement and is an automatic event of

---

[2] When analyzing whether to appoint a receiver to collect rents or other revenues, the Ninth Circuit has applied factors including "whether the property was of insufficient value to insure payment, and whether the [party opposing receivership] was of doubtful financial standing." *Canada Life*, 563 F.3d at 844–85. To appoint a receiver with managerial powers, however, additional considerations, such as an application of the *Canada Life* factors, are required. *Sterling Sav. Bank*, 656 F. Supp. 2d at 1259. Here, Defendant fails to meet its burden as to these two factors. First, the property appears to have been recently valued at $19,500,000, substantially more than the amount allegedly owed. ECF 12 at 16; ECF 13, Ex. 18, at 111; ECF 13, Vonderach Decl., at ¶ 25. Defendant has not submitted evidence to the contrary. Second, Defendant concedes Plaintiffs' financial condition is "indeterminate" and "at best mixed." ECF 18 at 11–12. Notably, Defendant states that "if Borrower is truly willing and able to pay the approximately $566,000 in overdue payments and is capable of making timely monthly payments moving forward . . . this may impact Fannie Mae's position on the necessity of a receiver." *Id.* at 12 n.15.

PAGE 6 – OPINION AND ORDER

default under Section 14.01(a)(2). It is therefore not subject to cure."); *id*. at 6–7 ("Borrower's failure to comply with City requirements for commercial short-term rentals violated Sections 6.02(e)(1) and (e)(2) of the Loan Agreement [and] Borrower violated Section 6.02(e)(5) by never notifying Lender or Fannie Mae of the City's zoning violation regarding the commercial short-term rentals."); *id*. at 8 ("Borrower and Guarantors have failed to pay the balance of the Note upon Fannie Mae's acceleration, which constitutes an additional event of default.").

Plaintiffs, however, contest and raise questions as to the validity of the alleged defaults. First, Plaintiffs argue that "the loan agreement contains no express prohibition on short-term residential rentals," ECF 12 at 4, and that Defendant's framing of the rentals as "commercial" is misplaced, *id*. at 12–15. Second, Plaintiffs produced evidence that 11 Marche Apartments were properly insured and had no lapse in coverage, and that the policies covered losses associated with short-term rentals. *Id.* at 5, 11; ECF 14, Connell Decl., at ¶¶ 4–6. Plaintiffs argue that Defendant's evidence merely shows that they "*may* be in technical default," that any failure to alert Defendant to the City code violation "cannot possibly be said to be a material breach," and that the factor is "neutral." ECF 12 at 15, 17.

At this stage of the proceedings, the Court finds this factor to be neutral.

### 2. Whether there is fraudulent conduct or the probability of fraudulent conduct

Defendant has produced evidence that Plaintiffs made misrepresentations and omissions regarding the operation of short-term rentals at 11 Marche Apartments. For instance, Defendant contends that Plaintiffs failed to properly insure the property, failed to notify Defendant of the City's imposition of a code enforcement fine in 2018, applied for an unauthorized change in use

PAGE 7 – OPINION AND ORDER

of its rental units, and failed to make required disclosures to Defendant. *See* ECF 6 at 6–8; ECF 8-1; ECF 8-2[3]; ECF 8-3; ECF 20-1; ECF 20-4.

Plaintiffs claim there was no fraudulent conduct, or "even if there has been, there is no risk that it continues." ECF 12 at 17. As to Defendant's first contention, Plaintiffs have put forth evidence that the property was properly and continuously insured. *Id*.; ECF 14, Connell Decl., at ¶¶ 4–6; ECF 14, Ex. 3, at 46–47. Plaintiffs, however, do admit they failed to properly notify Defendant of any code violation and failed to properly certify in their annual reporting that no such violation occurred. ECF 12 at 15 & n.5. However, Plaintiffs characterize these omissions as not material, not ongoing, "ticky-tack, innocuous, [and] technical violations" that do not warrant significant weight. *Id*. at 15, 18.

The Court notes that Plaintiffs' conduct appears, at a minimum, to be misleading. Plaintiffs failed to properly notify Defendant of the code violation both when it occurred pursuant to § 6.02(e)(5) of the Loan Agreement and in their annual certifications pursuant to § 8.02(b)(2)(E), though the citation's amount—$1,000—and its temporal distance to this action may render the omissions not material. *See* ECF 6 at 6–7; ECF 12 at 15 n.5. Additionally, while Plaintiffs disclosed the identities of Barsala and Pelican in their rent rolls and while these tenants were the only LLC tenants, ECF 12 at 17, Plaintiffs never directly informed Defendant or

---

[3] In their Response, Plaintiffs move to strike Defendant's Exhibit 2 as inadmissible hearsay. ECF 12 at 13 n.4. For the following reasons, this Court denies the motion. Federal Rule of Evidence 803(8) provides an exception to the rule against hearsay where "[a] record or statement of a public office . . . sets out . . . the office's activities [and] the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). The website at issue, https://www.portlandmaps.com, is operated by the City of Portland and sets out the activities of, inter alia, the Bureau of Development Services regarding permits and zoning. *See* ECF 18 at 6–7. Plaintiffs claim that the webpage is "not authoritative," based on disclaimers provided on the webpage. ECF 12 at 14. However, this Court finds these disclaimers do not indicate a lack of trustworthiness sufficient to render the exhibit inadmissible hearsay. As such, it qualifies as an exception to hearsay under Rule 803(8).

PAGE 8 – OPINION AND ORDER

Walker & Dunlop that they would be leasing twenty-eight of their sixty-two units to these entities for short-term rental use. Although Plaintiffs' conduct is concerning on this factor, no evidence of continuing fraudulent conduct has been presented.

   3. **Whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered**

Defendant is "deeply uncertain about [Plaintiffs'] stewardship of the property," and contends that the appointment of a receiver is necessary to preserve "both the rental cash flow and the physical condition of the property." ECF 6 at 11, 13. Citing the December 2020 rent roll, Defendant notes occupancy at 11 Marche Apartments was "a dismal 29%." *Id*. at 12; ECF 7-11 (December 2020 rent roll). Further, Defendant asserts that Plaintiffs "did little legwork . . . to locate residential tenants," resulting in "economic waste." ECF 6 at 13. However, this is not sufficient to show imminent danger of harm to the property. There is no evidence that Plaintiffs are using the property in such a way to cause its value to diminish or that the property's value is diminishing, *see Compass Bank*, 2017 WL 10378348, at *5, nor is there evidence that Plaintiffs have failed to pay property taxes, *see California Bank & Tr.*, 2012 WL 1883474, at *6.

Plaintiffs have, in fact, testified that the building is currently 92% occupied. ECF 13, Vonderach Decl., at ¶ 22. The property also appears to be valued well over the amount owed. While Defendant alleges that Plaintiffs owe over $14 million, ECF 6 at 8–9, Plaintiffs have produced evidence that in 2017, the property was valued at $21,000,000 and that in December 2020, "a serious buyer offered to pay $19,500,000" for the property. ECF 12 at 16; ECF 13, Ex. 18, at 111; ECF 13, Vonderach Decl., at ¶ 25 (noting third-party offer of $18,000,000 accounting for the prepayment penalty on the loan); *see also Sterling Sav. Bank*, 656 F. Supp. 2d at 1262 ("This offer to purchase the property serves as prima facie evidence of the Property's value.").

Plaintiffs have further put forth evidence that they are maintaining the property in good condition, ECF 13, Vonderach Decl., at ¶ 3; ECF 13, Ex. 1, and that there was no lapse in insurance coverage, ECF 14, Connell Decl., at ¶¶ 4–6. Furthermore, Plaintiffs are contractually obligated to maintain and preserve the property. ECF 7-5 at § 6.02(b)–(c); *see also Sterling Sav. Bank*, 656 F. Supp. 2d at 1263 ("Notably, [the borrowers] are bound by contract to preserve and protect the Property.")

Defendant has not provided sufficient evidence that Plaintiffs are currently in breach of these obligations such that the property is in imminent danger. While Defendant may have valid concerns about its investment, Defendant has failed to meet its burden to show that the property's value is being diminished or that there is any "imminent danger" to the property. Therefore, this factor weighs against appointing a receiver.

### 4. Whether legal remedies are inadequate

Defendant has instituted judicial foreclosure proceedings against Plaintiffs. ECF 12 at 6; ECF 13, Vonderach Decl., at ¶ 12; ECF 8-3 at 5; ECF 22 at ¶¶ 131–143. Foreclosure is the "typical legal remedy for a creditor in this situation." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1264. Defendant argues "it is very unclear whether [it] will be able to recover the full amount of its money damages" given Plaintiffs' failure to make payments since November 2020, and that the appointment of a receiver "may be [its] only chance to protect its exposure." ECF 6 at 13. Defendant's speculation does not suffice to demonstrate that the typical legal remedy of foreclosure is inadequate. In particular, Plaintiffs have indicated an ability and willingness to pay the past due loan payments, ECF 12 at 16; ECF 13, Ex. 17 (cashier's check), and Plaintiffs have put forth evidence that the value of the property exceeds that amount due on the loan, ECF 12 at

16; ECF 13, Ex. 18, at 111; ECF 13, Vonderach Decl., at ¶ 25. Therefore, this factor also weighs against the appointment of a receiver.

### 5. Whether the harm by denial of the appointment would outweigh injury to the party opposing appointment

Defendant argues that Plaintiffs "will not suffer substantial injury if a receiver is appointed," pointing to Plaintiffs' consent to the appointment in the loan documents as evidence. ECF 6 at 13. In fact, Defendant argues "[t]here is *no* harm to Borrower in allowing the appointment of a receiver to enforce the other contractual rights to which Borrower has also agreed." *Id*. at 14 (emphasis added); *see also Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) (explaining "[t]here is little hardship in enforcing the terms of the parties' bargain" where the parties contractually consented to the appointment of a receiver) (quotation marks omitted) (quoting *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 293 (E.D. Cal. 1991)). Defendant cites to Plaintiffs' "uncertain liquidity and motives" and the denial of Defendant's contractual rights as examples of its harm. Conversely, Plaintiffs contend that "appointment of a receiver to manage the property would divest Plaintiffs of all significant property rights that an owner may exercise," including collecting rents and managing the property as they see fit. ECF 12 at 20; *see also Sterling Sav. Bank*, 656 F. Supp. 2d at 1261 (noting "the grant of managerial powers . . . effectively divests the property owner of rights traditionally exercised by an owner").

While the Court acknowledges the possibility of harm to Fannie Mae, Defendant "has not submitted sufficient evidence to show that it would suffer harm if a receiver is not appointed." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1264; *see also Compass Bank*, 2017 WL 10378348, at *6 (comparing the "extreme prejudice" to borrower to "the lack of evidence that [lender] will suffer

prejudice *without* a receiver"). As noted above, Defendant has not made a sufficient showing of imminent danger to the property, and the property's value appears to exceed the amount owed. Considered in the aggregate, these possible harms do not support the "extraordinary" measure of appointing a receiver; for this reason, this factor weighs against appointment.

6. **Probability of success in the action and possibility of irreparable injury to proponent's interest**

Defendant has produced evidence suggesting certain breaches of contract and potential events of default. However, even assuming, arguendo, that Defendant is likely to prevail, Defendant has not met its burden to show irreparable injury to its interest. *See Sterling Sav. Bank*, 656 F. Supp. 2d at 1264. The evidence submitted tends to show that the 11 Marche Apartments are sufficiently insured, occupied, and maintained. *See generally* ECF 13, Vonderach Decl. As such, on the facts before this Court, this factor weighs against appointing a receiver.

7. **Whether proponent's interest sought to be protected will in fact be well-served by receivership**

Defendant has an interest in the property as a creditor. On this record, however, Defendant has not met its burden to show that the "interest is unprotected and that a receiver is necessary to protect it." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1264. Defendant has not sufficiently demonstrated that Plaintiffs are not properly managing 11 Marche Apartments, or that Trigild IVL, the proposed receiver, would be better able to operate and manage the property. Defendant in fact notes that Plaintiffs' "key principal," John Evilsizor, is "a highly sophisticated commercial property operator" and the commercial property manager "has managed the day-to-

day operations of hundreds of commercial properties." ECF 18 at 2; *see also* ECF 13, Vonderach Decl., at ¶ 2. This factor weighs against appointment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Appointment of Receiver, ECF 6, is DENIED.

**IT IS SO ORDERED**.

DATED this 7th day of July, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge