IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORTLAND MARCHE, LLC**, and **CERES RICHLAND, LLC**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**FEDERAL NATIONAL MORTGAGE ASSOCIATION**,<br><br>        Defendant. | Case No. 3:21-cv-00569-IM<br><br>**OPINION AND ORDER** |

Craig G. Russillo, Schwabe, Williamson & Wyatt, 360 SW Bond St. Suite 500, Bend, OR 97702. Sara C. Cotton and Nathan D. Sramek, Schwabe, Williamson & Wyatt, 1211 SW 5th Ave Suite 1900 Portland, OR 97204. Attorneys for Plaintiffs.

Sarah J. Crooks and Matthew J. Mertens, Perkins Coie, LLP, 1120 NW Couch Street 10th Floor, Portland, OR 97209-4128. Attorneys for Defendant.

**IMMERGUT, District Judge.**

       Before this Court is Defendant Federal National Mortgage Association's ("Defendant" or "Fannie Mae") Motion to Enforce Settlement Agreement, ("Mot.") ECF 75, between Defendant and Plaintiffs Portland Marche, LLC and Ceres Richland, LLC (collectively, "Plaintiffs" or "Borrower"). In its Motion, Defendant asks this Court to enforce a settlement agreement

PAGE 1 – OPINION AND ORDER

containing eight material terms that Defendant alleges was intended to be binding on the parties. *Id.* In addition, Defendant asks this Court to order the parties to continue negotiating any remaining undefined standard terms of the settlement agreement in good faith. *Id.* This Court held oral argument on December 6, 2023. Minutes of Proceedings, ECF 80. At oral argument, this Court offered the parties the opportunity to have an evidentiary hearing for this Motion. *Id.* Both declined. Plaintiffs represented that no hearing would be necessary because all relevant documents had been submitted to this Court and because no additional evidence would be presented at an evidentiary hearing. *Id.* Defendant agreed that an evidentiary hearing would be unnecessary. *Id.*

As stated on the record, this Court GRANTS Defendant's Motion to Enforce Settlement Agreement, ECF 75, and ORDERS the parties to continue negotiating their agreement in good faith. Further, based on this Court's ruling, this Court VACATES the upcoming pretrial conference and trial dates.

## LEGAL STANDARDS

A district court has the power to summarily enforce an agreement to settle a case pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *see also Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137–39 (9th Cir. 2002) (applying *Callie* in reviewing district court's order to enforce settlement agreement). However, a district court may enforce only complete settlement agreements. *Id.* "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Id.* (citation omitted). Summary enforcement is appropriate when there is no dispute of material facts concerning the existence or terms of a settlement agreement. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretations of contracts generally. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Under Oregon law, whether a contract exists is a question of law. *In re Marriage of Baldwin*, 215 Or. App. 203, 207 (2007). In determining whether a contract exists, a court must examine the parties' objective manifestations of intent, as evidenced by their writings, words, or actions. *Wall St. Mgmt. & Cap., Inc. v. Crites*, 274 Or. App. 347, 358 (2015).

"[P]arties who agree on the essential terms of a contract may intend those terms to be binding and, at the same time, implicitly agree to bargain in good faith on the remaining terms. That fact does not prevent a court from enforcing the parties' agreement." *Hughes v. Misar*, 189 Or. App. 258, 266 (2003). Oregon courts "routinely . . . conclude[] that parties have entered binding and enforceable agreements (including settlement agreements), notwithstanding the fact that future formalization in writing is contemplated." *Wieck v. Hostetter*, 274 Or. App. 457, 472–73 (2015). However, when "the writing is regarded as a prerequisite to the closing of the contract, the agreement does not become binding if there has been a failure to reduce it to writing." *Britt v. Thorsen*, 258 Or. 135, 138 (1971).

## BACKGROUND

On or about April 13, 2017, Plaintiffs entered into a mortgage loan agreement for a multi-unit residential apartment building, known as 11 Marche Apartments, with Walker & Dunlop, LLC ("Walker"), which included a $12,742,000 loan to Plaintiffs. Multifamily Loan and Security Agreement, ECF 21-1, Ex. 1; First Amended Complaint, ECF 21 ¶¶ 5–6. That same day, Walker assigned the Note and security instrument to Defendant, who is the current holder of the loan. First Amended Complaint, ECF 21 ¶ 8.

During the course of the mortgage, Plaintiffs entered into several short-term rental leases ("STRs") to rent unoccupied units. *Id.* ¶ 9. Believing that these STRs violated the terms of the

PAGE 3 – OPINION AND ORDER

Loan Agreement, Defendant sent Plaintiffs a formal notice of default on December 10, 2019. *Id.* ¶ 10; Notice of Default, ECF 21-1, Ex. 4. On February 21, 2020, Defendant accelerated the loan. First Amended Complaint, ECF 21 ¶ 13.

On February 17, 2021, Plaintiffs filed suit against Defendant in Multnomah County Circuit Court stating three claims for relief: (1) violations of Oregon House Bill 4204; (2) a declaratory judgment that Plaintiffs are not in default under the Loan Documents; and (3) Common Law Fraud. Complaint, ECF 1-2, Ex. 2 ¶¶ 32–48. On April 15, 2021, Defendant removed this action to federal court. Notice of Removal, ECF 1. Defendant then answered and raised three counterclaims: Appointment of a Receiver, Breach of Contract, and Judicial Foreclosure. ECF 5 ¶¶ 106–42. Plaintiffs filed an amended complaint on June 9, 2021 which stated the same three claims for relief, as well as a claim for Breach of the Common Law Duty of Good Faith and Fair Dealing, ECF 21 ¶¶ 33–54. Defendant answered on June 23, 2021, raising the same three counterclaims. Amended Answer, ECF 22.

During the course of the litigation, the parties attempted to resolve their dispute by negotiating for several months, which included holding a settlement conference with the Honorable Youlee Yim You on November 15, 2022. Mot., ECF 75 at 3; *see* Minutes of Proceedings, ECF 59; Order, ECF 60. On August 10, 2023—this Court's deadline for the parties' jointly proposed pretrial order and verdict form—the parties filed a motion to extend the deadlines for the jointly proposed pretrial order and trial documents. Unopposed Motion for Extension of Pretrial Deadlines, ECF 66. The parties requested two additional weeks to file the related documents. *Id.* The next day, this Court denied the parties' motion because the proposed extension did not provide the Court with sufficient time to prepare for the pre-trial conference and trial. Order, ECF 67.

PAGE 4 – OPINION AND ORDER

Then, on Thursday, August 17, 2023, counsel for Plaintiffs emailed Defendant, stating:

> [O]ur clients are willing to resolve this case on the below terms:
>
> 1. The parties execute a reinstatement agreement that reinstates the Loan;
>
> 2. Borrower will begin making regular principal and interest payments as soon as the reinstatement agreement is executed by Borrower;
>
> 3. Borrower will deliver to Fannie Mae a $560,000 cashier's check as soon as the settlement agreement is executed by Borrower;
>
> 4. All accrued principal and non-default interest, less the $560,000 payment, will be included in a new note (the "New Note"), secured by the property and payable upon the Loan's original maturity date in May 2024;
>
> 5. Fannie Mae waives all accrued and remaining default interest and late fees;
>
> 6. Each side is responsible for its own costs and attorney's fees; and
>
> 7. The parties will dismiss all claims related to the property with prejudice after executing the settlement agreement.
>
> Regarding ACheck,[1] the "Do Not Process" designation will remain until the Loan is paid off. Once the Loan is paid off, Fannie Mae will agree that our clients can apply to have the DNP designation removed. Fannie Mae will consider this application in the same manner as other borrower/key principals who have a DNP designation. Fannie Mae will abide by the princip[les] of good faith and fair dealing in its consideration of the application.

---

[1] Defendant's ACheck database notifies loan originators who plan to assign their loan to Fannie Mae not to issue loans to parties who have a "Do Not Process" designation without contacting Defendant first. *See* Response, ECF 77 at 12; *Section 307 – Applicant Experience Check*, Fannie Mae Multifamily Selling and Servicing Guide, https://mfguide.fanniemae.com/node/10236 (last visited December 7, 2023).

PAGE 5 – OPINION AND ORDER

**Of course this proposal is contingent on a formal agreement to
a form of settlement that contains other standard terms.**

Matthew A. Mertens Declaration ("Mertens Decl."), ECF 76-1, Ex. 1.

The following day, counsel for Defendant responded to Plaintiffs' email stating, "**Fannie Mae accepts borrowers' settlement offer based on the key settlement terms listed below.**" *Id.* On Monday August 21, 2023, counsel for Plaintiffs emailed this Court the following message: "**This email is to notify the court that the parties have reached a complete and final settlement in princip[le] and are working to document the agreement. The settlement will result in the dismissal of the case.**" Mertens Decl., ECF 76-1, Ex. 2. In response, this Court entered a 60-day order of dismissal, vacating the parties' remaining pretrial deadlines and trial date. 60-Day Order of Dismissal, ECF 70.

The parties then began to draft the settlement agreement and the loan reinstatement agreement contemplated by the first term of the August 17, 2023 email. The parties agreed that Defendant would prepare the initial draft. Plaintiffs suggested that the parties include the unpaid principal and interest in an amendment to the existing loan, as opposed to creating a separate note. Mertens Decl., ECF 76-1, Ex. 3 at 11–12. On September 12, 2023, Defendant sent Plaintiffs a first draft of the settlement documents. *Id.* at 9–10. The draft settlement agreement contained the eight key terms from the parties' August 17 and August 18, 2023 emails, as well as a proposed confidentiality provision. Mertens Decl., ECF 76-1, Ex. 4 at 2, 4. The draft loan reinstatement agreement also included Defendant's loan servicer, Walker, as a party to the contract. *Id.*, Ex. 5 at 1.

On October 5, 2023, in email correspondence, Plaintiffs again suggested that the accrued principal and non-default interest be rolled into the loan and made due and payable upon maturity, eliminating the need for a new note contemplated by term four of the settlement emails.

PAGE 6 – OPINION AND ORDER

*Id.*, Ex. 3 at 9; *see id.*, Ex. 1. Plaintiffs also suggested that the envisioned settlement agreement and reinstatement agreement be combined into one document. *Id.*, Ex. 3 at 9. On October 8, 2023, Defendant agreed to remove the new note provision and incorporate the accrued principal and non-default interest into a loan amendment. *Id.* at 7. Plaintiff did not raise any objection to either the confidentiality provision, or the inclusion of Walker as a party to the loan reinstatement agreement, or to any other term.

On October 17, 2023, the parties agreed to extend this Court's deadline to consummate a settlement. *Id.* at 4–5; Unopposed Motion for Extension of Time, ECF 71. The next day, this Court granted the parties' unopposed motion. Order, ECF 72.

Defendant sent a new draft of the settlement documents to Plaintiffs on October 19, 2023, explaining that the purpose of including Walker as a party to the loan reinstatement was to bind the loan servicer to the waiver of late fees and default interest discussed in the parties' exchange of key settlement terms on August 17 and 18, 2023. Mertens Decl., ECF 76-1, Ex. 3 at 2.[2]

Over the next two weeks the parties exchanged emails regarding various terms of the settlement agreement. *See* Mertens Decl., ECF 76-1, Ex. 3 at 1–2. Then, on November 3, 2023, Plaintiffs' key principal stated through counsel that he would not execute the settlement documents, he would not allow his counsel to redline the settlement documents, and he would not further negotiate the structure of the settlement. *See* Mertens Decl., ECF 76-1, Ex. 8 at 3. The only issues Plaintiffs identified were the confidentiality provision of the settlement agreement and the inclusion of Walker as a party to the loan reinstatement agreement. *See id.* Defendant

---

[2] As confirmed by Plaintiffs' counsel during oral argument, throughout these negotiations, the only change to the eight terms the parties agreed to via email was the removal of the new note term, which was requested by Plaintiffs. Mertens Decl., ECF 76-1, Ex. 3 at 9; Mertens Decl., ECF 76-1, Ex. 7; Minutes of Proceedings, ECF 80.

offered to remove the confidentiality provision and Walker from the loan reinstatement agreement. *See id.* at 1–3. Plaintiffs declined, saying only that the "proposed settlement and reinstatement agreement are materially different than what [Plaintiffs' key principal] contemplated," but failing to identify any particular term to which Plaintiffs objected. *Id.* at 1.

On November 8, 2023, the parties notified this Court via email that they were unable to consummate a settlement and requested to reinstate the case. This Court held a status conference to set pretrial deadlines on November 14, 2023. Minutes of Proceedings, ECF 74. At that status conference, Defendant notified this Court of its intent to file a Motion to Enforce the Settlement Agreement, *id.*, which was filed on November 16, 2023, ECF 75.

## DISCUSSION

Defendant argues that this Court should enforce the settlement agreement, consisting of eight material terms, which became immediately enforceable on August 18, 2023, when Defendant accepted Plaintiffs' offer of settlement containing those eight terms. Mot., ECF 75 at 9–13. Plaintiffs counter that this Court may not enforce the settlement terms because the agreement had not been fully reduced to writing and signed by the parties, which they claim was a precondition of an enforceable settlement agreement. Plaintiffs' Response to Motion to Enforce Settlement Agreement ("Response"), ECF 77 at 8–13.

This Court agrees with Defendant. Because the parties manifested their intent to be bound immediately by a settlement agreement containing the eight terms proposed in Plaintiffs' August 17, 2023 email, and accepted by Defendant on August 18, 2023, the parties have entered into an enforceable contract.

**A. The Eight Essential Terms of the Settlement Are Enforceable**

Courts look to the parties' writings, actions, and communications to determine whether they have manifested an intent to create a contract. *Crites*, 274 Or. App. at 358. On August 17,

PAGE 8 – OPINION AND ORDER

2023, Plaintiffs stated that they were "willing to resolve the case" on eight explicitly defined terms. Mertens Decl., ECF 76-1, Ex. 1. The next day, Defendant agreed to the terms without modification, stating "Fannie Mae accepts borrowers' settlement offer based on the key settlement terms listed below." *Id.* On August 21, 2023, Plaintiffs notified the court via email "that the parties have reached a *complete and final* settlement in princip[le] and are working to document the agreement. The settlement *will result in the dismissal of the case*." *Id.*, Ex. 2 (emphasis added). The parties ceased preparing their trial documents, which were due August 24, 2023. *See id.* In response, this Court vacated the remaining pretrial and trial dates. 60-Day Order of Dismissal, ECF 70. Over the next few months, the parties worked to implement their agreement by drafting the settlement documents referenced in the agreed terms. *See generally* Mertens Decl., ECF 76-1, Ex. 3. Other than Plaintiffs' request to remove the new note settlement term, which was assented to by Defendant, the parties did not change the agreement's material terms. *Id.* These facts show the parties' objective intent to be bound immediately by the eight settlement terms. *Van v. Fox*, 278 Or. 439, 449 (1977) (stating that because the parties had agreed to all essential terms of an agreement and intended to be bound by them, the parties were obligated to continue negotiating additional terms in good faith).

Plaintiffs resist this conclusion, arguing that they expressed an intent to be bound by the proposed settlement terms only after they were reduced to writing and signed by the parties. Response, ECF 77 at 8–13. Specifically, they cite the conditional language in their settlement offer: "Of course this proposal is contingent on a formal agreement to a form of settlement that contains other standard terms." Mertens Decl., ECF 76-1, Ex. 1.

However, this contingent language does not undercut the parties' manifest intent to be bound immediately by those express settlement terms. After all, Oregon courts "routinely . . .

PAGE 9 – OPINION AND ORDER

conclude[] that parties have entered binding and enforceable agreements (including settlement agreements), notwithstanding the fact that future formalization in writing is contemplated." *Wieck*, 274 Or. App. at 472–73. This is because, as the Oregon Court of Appeals explained in *Hughes v. Misar*, "[w]hen parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the immediately binding nature of the agreement." 189 Or. App. at 264. Without more, therefore, the intent to formalize an agreement cannot prevent the agreed-on essential terms from becoming binding.

That principle applies with full force here, as the facts in *Hughes* show. There, all the parties signed a list of terms outlining the proposed settlement. *Id.* at 261. Although the parties had not consented to all provisions of the settlement, the court found that the parties intended to be bound immediately to the "essential terms" when they initially signed the settlement terms sheet. *Id.* at 264. The court cited the cancellation of one of the plaintiff's depositions as evidence that the parties intended to be bound by their settlement terms. *Id.* Further, the court found that the parties implicitly agreed to bargain in good faith to implement their agreement. *Id.* at 266.

This case bears all the hallmarks of objective agreement as identified in *Hughes*. Like in *Hughes*, the parties here agreed on the essential terms of the settlement. Again, Plaintiffs have not identified any material terms of the settlement agreement yet to be agreed to. *See* Response, ECF 77; Minutes of Proceedings, ECF 80. Further, the parties here stopped their preparations for trial when they agreed on the eight key terms, just as the parties in *Hughes* cancelled the scheduled deposition. *See* Mertens Decl., ECF 76-1, Ex. 2. Additionally, the parties here had been negotiating their settlement documents over the course of multiple months. *See* Mertens Decl., ECF 76-1, Ex. 3. Other than Plaintiffs' own proposal to include accrued principal and non-

default in the amended note as opposed to doing so in a new note, which Defendant accepted, the edits made during these negotiations were "minor in nature and did not affect the essential terms of the agreement," *id.*; *see Hughes*, 189 Or. App. 258 at 267. Accordingly, like in *Hughes*, the parties here intended to be bound by the proposed settlement terms even though they anticipated negotiating additional "standard" terms and reducing their settlement agreement to writing.[3]

Ninth Circuit case law further shows that conditional language in an agreement does not override the parties' objective manifestation of intent to be bound immediately by the agreement's terms. Applying the objective theory of contracts under California law, the Ninth Circuit in *First National Mortgage Company* found that the parties intended to be bound by the "final proposal" for a ground lease even though it had not been reduced to writing and executed. *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011). The Ninth Circuit so held even though the final proposal stated that its terms "are *hereby accepted* by the parties *subject only to* approval of the terms and conditions of a formal agreement." *Id.* (emphases in original). In reasoning that this language could not alter the agreement's binding nature, the Ninth Circuit admonished that "an agreement is not unenforceable merely because it is subject to the approval of a formal contract." *Id.* (citations omitted). The court noted the final proposal omitted defendant's standard non-binding clause, which it had inserted in earlier drafts. *Id.* And the court observed that the name of the document as "final proposal" expressed an intent that the document be binding because previous drafts had called the document "counter proposal" and "revised proposal." *Id.* at 1065–66. Based on these facts, the Ninth Circuit agreed with the district court that the parties were bound by the agreement's terms. *Id.* at 1066.

---

[3] Although Plaintiffs heavily relied on *Hughes* at oral argument, as explained above, *Hughes* undermines Plaintiffs' position.

PAGE 11 – OPINION AND ORDER

As in *First National Mortgage Company*, the contingency language in Plaintiffs' settlement offer, without more, has no bearing on the parties' clear intent to be bound immediately by the eight material terms. Plaintiffs told this Court that "the parties have reached a *complete and final* settlement in princip[le] and are working to document the agreement. The settlement will result in the dismissal of the case." Mertens Decl., ECF 76-1, Ex. 2. Just as the Ninth Circuit distinguished between the terms "final" and "counter" or "revised," this Court considers it highly telling that Plaintiffs did not use the default language of Local Rule 41-1(a) ("upon reaching substantial agreement about the terms and conditions of a settlement") and instead called the settlement "complete and final" and stated that all that was left was "document[ing]" the agreement.

In sum, under settled Oregon law and relevant Ninth Circuit case law, the eight material terms here were enforceable, and the parties' intent to formalize their agreement cannot prevent enforcement of a settlement agreement based on those terms.

**B.  Plaintiffs' Proffered Cases Have No Applicability Here**

Plaintiffs offer two cases in response, but neither persuades. Plaintiffs first cite *Britt v. Thorsen*. There, two of the six defendants reached an oral settlement agreement with one of the two plaintiffs. *Britt*, 258 Or. at 136. When the plaintiffs later refused to sign the formal agreement, defendants sued to enforce the settlement. *Id.* The Oregon Supreme Court found the parties had not manifested an intent to be bound immediately by the settlement terms for two independent reasons. First, there was no evidence the parties who negotiated the agreement possessed authority to settle the case on behalf of those not present. *Id.* at 139. Second, the relevant defendants and plaintiff mutually understood that nothing was enforceable until the settlement terms had been written out and then signed. *Id.* at 138–39 (defendant explaining that it was "essential to this agreement that it be a signed writing" and plaintiff concurring that "there

PAGE 12 – OPINION AND ORDER

was supposed to have been something draw[n] up to writing and it be in effect *after* it was signed" (emphasis added)). Based on these circumstances, the court held there was no enforceable contract before all of the parties signed a written settlement agreement. *Id.* at 139.

Unlike in *Britt*, here, there was no clear contemporaneous agreement that the eight essential terms were not binding until a document was signed. *See* Mertens Decl., ECF 76-1, Ex. 1. Contrary to Plaintiffs' position, *Britt* does not stand for the proposition that one party's subjective intent concerning formalization language can render a contract unenforceable—indeed, this would run against the categorical case law described above, *see supra* Section A. And no party has argued that its attorneys did not have authority to settle the case on its behalf.

Plaintiffs next cite *Sterling Sav. Bank v. Sing Chan*, but this case also is inapplicable. No. 3:12-CV-00269-ST, 2013 WL 5785172 (D. Or. Oct. 28, 2013). There, the court refused to enforce a settlement agreement because the defendants expressly conditioned their acceptance of plaintiff's settlement offer on two material terms: whether the deal had adequate security, and whether defendants would be responsible for paying a sizeable tax liability. *Id.* at *5. Because the parties had not resolved these issues, the court concluded they did not intend to be bound by the terms of the agreement. *Id.*

Unlike in *Sing Chang*, Plaintiffs' proposed settlement terms identified no material terms that remained to be negotiated. *See* Mertens Decl., ECF 76-1, Ex. 1. Instead, Plaintiffs' August 17, 2023 email only identified "other standard terms" left to be finalized. *Id.* Additionally, at oral argument, Plaintiffs conceded that their written settlement proposal of August 17, 2023, which Defendants accepted in writing on August 18, 2023, contained all of the parties agreed to material terms, and there were no additional material terms left to be negotiated. Minutes of Proceedings, ECF 70. Thus, *Sing Chan* does not help Plaintiffs here.

PAGE 13 – OPINION AND ORDER

### C. Additional Terms Defendant Later Proposed Do Not Affect the Enforceability of the Eight Terms

Finally, Plaintiff argues that the parties did not intend to be bound immediately by the eight key settlement terms because Defendant later added two new material terms—the inclusion of Walker to the loan reinstatement agreement and a confidentiality provision—to the draft settlement documents. Response, ECF 77 at 12.

These new terms, however, do not disturb the parties' binding settlement agreement as of August 18, 2023. For one, these new terms were proposed for Plaintiffs' benefit. *See* Mertens Decl., ECF 76-1, Ex. 8 at 1–2. Additionally, as soon as Plaintiffs expressed objection to these two terms, Defendant offered to remove these terms, suggesting that they are immaterial to the settlement agreement. Because the parties had already agreed to the settlement's key terms on August 18, 2023, these new terms were proposed (and rejected) modifications—they do not disturb the parties' previous intent to settle the case. *See Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 580 (2005) ("Because the parties already had agreed to the essential terms of the agreement, [discussions regarding suggested changes to the contract terms] are more accurately characterized as proposed modifications to the contract.").

\* \* \*

In sum, this Court holds that the parties' agreement to eight essential terms via email exchange on August 17 and 18, 2023, is binding and enforceable. Plaintiffs' arguments to the contrary rely on cases too dissimilar from the circumstances here to be of any persuasive value. And Defendant's proposal of new terms have no bearing on the enforceability of the agreement as to eight material terms. The parties must abide by the eight essential terms and formalize the remainder of their settlement agreement.

## CONCLUSION

Accordingly, this Court GRANTS Defendant's Motion to Enforce Settlement Agreement, ECF 75. Consistent with the parties' representations during oral argument, this Court ORDERS the parties to continue negotiating in good faith on terms of the settlement agreement yet to be defined. The parties have until December 20, 2023 to finalize their settlement agreement or notify this Court if additional time is required.

**IT IS SO ORDERED.**

DATED this 11th day of December, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge